## THE STATE OF IOWA, *ex rel.* VEILE, v. FUNCK.

1. **Elections**: MUNICIPAL: CONTEST. The charter of a municipal corporation provided, that the council thereof should be "the judge of the election and qualification of its own members," but no ordinance was ever adopted defining the method by which an election of such officers should be contested: *Held,* That a claimant was not precluded from having his right to such an office determined upon information in the method prescribed by chapter 151, Revision of 1860.

:2. —— QUERE: JURISDICTION. If such ordinance had been enacted, would the courts have jurisdiction under said chapter? Does the provision in the charter relate alone to the canvassing of votes and a declaration of the result thereof?

3. —— VERDICT AND JUDGMENT. Where an information under chapter 51 of the Revision of 1860, clearly stated the grounds of the relator's claim to an office; the issue joined thereon involved his right thereto; and the court instructed the jury that if they found, from the evidence, that a majority of the votes cast at said election were cast for the claimant, their verdict would be: "We the jury find the defendant guilty of unlawfully holding and exercising the office," &c.; and that if they found, from the evidence, that the defendant received a majority of the legal votes cast, the form of the verdict might be: "We, the jury, find the defendant not guilty": *Held*, That a verdict in the first form warranted a judgment ousting the defendant from the office, and placing the claimant in possession of the same, with the books, papers and property thereunto belonging.

4. Verdict: MISCONDUCT OF JUROR. An appellant cannot complain of a verdict, on the ground that one of the jurors had formed and expressed an unqualified opinion or belief before the jury was impanneled and sworn, when it does not appear that the juror was examined under oath, as to whether or not he had formed or expressed such belief.

5. —— RECITAL IN RECORD. The recital in a journal entry, that "the jury was impanneled, *tried* and sworn," is not sufficient to show that they were examined under oath as to whether or not they had formed or expressed an unqualified opinion or belief.

6. New trial: EVIDENCE. The Supreme Court will not grant a new trial on the ground that the verdict is against the evidence, when the evidence is conflicting.

### *Appeal from Muscatine District Court.*

### MONDAY, DECEMBER 5.

THE relator and defendant were candidates for the office of mayor of the city of Muscatine, at an election held on the first Monday in March, 1864. It seems that the city council declared defendant elected, and that he accordingly qualified and entered upon the discharge of the duties of said office. The relator filed an information under chapter 151 of the Revision, claiming that he received a majority of

the legal votes cast at said election, and that defendant usurped the said office of mayor, and, as against the said relator, was unlawfully exercising the duties thereof. The cause was submitted to a jury, and upon the verdict, the court rendered judgment in favor of the relator, and ordered defendant to deliver to him all books and papers in his custody or under his control, belonging to said office. Defendant appeals.

*Richman & Karskaddan* for the appellant.

*Cloud* and *Hanna* for the appellee.

WRIGHT, Ch. J. — Upon this record four questions are made : 1st. Did the court below err in holding that the power of the city council to judge of the election and qualification of one of its members, did not bar this proceeding ? 2d. Did the verdict warrant the judgment ? 3d. Did the misconduct of the juror, Stevens, vitiate the verdict ? 4th. Did the evidence warrant the verdict ?

I. The charter declares that the legislative authority of the city shall be vested in a city council, consisting of the mayor and a board of aldermen, composed of two from each ward ; that a majority shall be necessary to constitute a quorum, and that it *shall be the judge of the election and qualification of its own members.* §§ 16, 17 and 18.

1. ELEC-
TIONS: municipal: contest.

It is conceded that the city council never has, by ordinance or otherwise, provided any method for trying contested election cases. The whole matter stands upon the single declaration of the charter, that this body shall be the judge of the election and qualification of its own members. Whether, if the council had by ordinance or otherwise provided the method or means for contesting elections of this kind, its determination or adjudication thereunder, would exclude the jurisdiction of

2. — Quere: jurisdiction.

the courts under the general statutes regulating informa-
tions; or, whether the claimant might not elect which
remedy he would pursue (if not both), we need not deter-
mine. Nor need we inquire whether the power given to
the city council does not relate alone to the canvassing of
the votes, and a declaration of the result; and was not
intended to confine the parties interested to such a contest
as it might prescribe. We say we need not enter upon
these inquiries, as we are of the opinion that until the coun-
cil has, by ordinance or otherwise, prescribed the method
in which cases of contest may be conducted, the claimant
was not bound to submit his claims to the city tribunal, but
might file his information and have his right to the office
determined by the courts of the county, as provided by
chapter 151 of the Rev. For, until the council has acted,
and adopted some regulations and forms for carrying the
power thus given into execution, no one claiming an office
can know what steps to take or how to proceed. When
or how is he to appear? What notice is to be given?
How, and under what rules, is testimony to be taken?
Within what time is he to make his claim? Is the deter-
mination of the council final, or is it reviewable in another
tribunal, on appeal, or otherwise? These, and many other
inquiries which will naturally suggest themselves, seem to
show the necessity of some action upon the part of the
council to make this power effective, and that without such
action it would be unwise, impolitic, and even grossly
unjust, to deny to claimant the right to resort to a remedy
—plain, simple, and clearly pointed out by the law. And
we may remark, in conclusion upon this part of the case,
that what is said in *Ex parte Strahl*, 16 Iowa, 369, about
the general laws providing no contest of elections to muni-
cipal offices, and in relation to the exercise of such power
by each municipality, relates to contests under chapter 37
of the Revision, and was not intended to refer to "infor-

mations" as provided for in chapter 151, and under which this proceeding was instituted. Not only so, but in that case the city council had provided by ordinance a method of determining cases of contest. Then again, the question there made arose upon *habeas corpus*, and not upon a direct proceeding, like this, by information, by a party claiming the office against the incumbent.

II. Did the verdict warrant the judgment? The law provides that if the District Attorney, on demand, neglects

3. —— or refuses to file an information, any citizen
Verdict and
judgment. claiming a public office may file the same, against any one who usurps or unlawfully exercises the duties thereof, and may prosecute the same in his own name to final judgment. The information is to consist of a plain statement of the facts constituting the ground of the proceeding, which shall stand for an original petition. The defendant is to answer the information in the usual way, and, issue being joined, shall be tried in the usual manner. When the defendant holds the office which another claims, the information is to state the name of the claimant, and the trial, if practicable, is to determine the rights of the contesting parties. If judgment is for the claimant, he shall proceed to exercise the functions of the office, after qualifying in the manner required by law; the court shall order the defendant to deliver over all books and papers in his custody belonging to the office, and that he be ousted and altogether excluded from such office, and pay the costs of the proceeding. (Rev., §§ 3732–3745.) In his petition, plaintiff claims that he was elected to the office of mayor; that legal votes cast for him were rejected, and illegal votes received and counted for his competitor; that there were no other candidates, and that, notwithstanding he was elected by the legal votes cast, the said defendant was declared elected and inducted into said office. Defendant admits that there were no other candidates; claims that he,

and not said plaintiff, was elected to the office, and denies that he usurps or unlawfully exercises the duties thereof.

All the testimony offered by either party was directed to the issue as thus made; and it is but too manifest that it was the trial of an ordinary "contested election," each party claiming to have been duly and legally elected. The court, after stating fully to the jury the law arising upon the facts presented, and explaining very clearly the issues as made by the pleadings, proceeded as follows: " The simple question for you to determine is, which one of the parties the relator (Viele), or the defendant (Funck), received a majority of the legal votes cast for the office of mayor, at the city election, in March last. If you find from the evidence that a majority of the votes at said election were cast for Veile, the form of your verdict may be, " we, the jury, find the defendant guilty of unlawfully holding and exercising the office of mayor of the city of Muscatine." If you find, from the evidence, that defendant, Funck, received a majority of the legal votes cast for mayor at said election, the form of your verdict may be, " we, the jury, find the defendant not guilty." The judge then proceeded very minutely to point out and explain what were legal, and what were illegal votes, and that the candidate receiving a majority of *legal* votes was elected to the office. By their verdict, the jury found for the plaintiff, or that a majority of the legal votes were cast for him in the very language of the form given them by the court; and it was thereupon ordered and adjudged that said defendant should be ousted and excluded from said office, and that plaintiff should be placed in possession of the same, and empowered to perform all the duties thereof; that he was entitled to all the right thereof from the first Monday in March, 1864, until the same date in 1865; and that defendant should deliver to plaintiff all the books, papers and property, belonging to said office, or under his control, and that

defendant pay the costs, &c. To this judgment it is now objected, that while the verdict found that defendant was not entitled to the office, it did not find that plaintiff was; that it by no means follows that plaintiff was elected, if defendant was found to unlawfully hold the office, for that there may have been a tie, and if so, plaintiff would have no more right to the office than defendant. Under some circumstances, defendant's position would certainly be entitled to great weight, and but for the very matter in issue between the parties in this instance; the character of the contest; the very clear charge of the court as to the form of the verdict; and the very words of the finding corresponding so exactly with the directions (and these directions leaving scarcely a possibility of room for doubt as to what the court and jury mutually understood and intended), we should be ready to hold that the judgment, so far as it declares plaintiff elected and entitled to the office, was erroneous, or at least not warranted by the verdict. We are not at liberty, however, to lose sight of all these matters in determining the question before us. What did the jury intend to find by this verdict, is the real matter for our determination, to be arrived at, of course, from the language used, and the issue as made and presented for their decision. It is sufficient if it expresses their intention (Rev., § 3084), and see *McGregor et al.* v. *Armill*, 2 Iowa, 32. As was said in that case, the mind can have no hesitation in saying that the intention of the jury is expressed, and so expressed that but one judgment could be rendered. And that judgment in this case could only be for plaintiff, and against defendant upon the issues determined by the verdict. When the jury found that defendant "was guilty of unlawfully holding and exercising the office," they necessarily, under the pleadings and instructions, found that a majority of the legal votes were cast at said election for Veile. The jury could not have found this

verdict if each candidate received the same number of votes, for they were expressly instructed that their verdict was to be in this form, if they found that Veile had a *majority* of the votes cast.

In the case of *Fromme* v. *Jones*, 13 Iowa, 474, referred to by appellant, it is said that it is a general rule that although a verdict does not conclude formally in the words of the issue, yet if the point in issue can be collected from the finding, the court will put the verdict in form. When, however, the amount cannot be definitely ascertained by reference to the pleadings, or to some certain data given by the jury, the court cannot assume the power to fix the amount of the judgment." In that case it was found that the court did not have the requisite positive data, upon which to base the judgment, and as a consequence could not assume the power of fixing the amount of plaintiff's recovery. The same general rule is recognized in *Coffer* v. *Jones*, 11 Pick., 48, where it is said that, " It is undoubtedly true, that a mere formal defect in the verdict is immaterial. It is not necessary that it should follow the precise language of the issue, but it must be responsive to it, and so expressed as to render it certain that the jury decided the question or questions submitted to them, and any uncertainty on this point is fatal." And see *Stevens* v. *Campbell*, 6 Iowa, 538. *Armstrong* v. *Pierson*, 15 Id., 476; *Cassel* v. *Western Stage Co.*, 12 Id., 47.

III. Under the third head it is claimed that the juror, Stevens, had formed and expressed an unqualified opinion against defendant, upon the entire merits of the case, prior to his being accepted and sworn, which fact was not known to appellant or his counsel at the time, and not until after the rendition of the verdict. In disposing of this point, we might refer in detail to the several affidavits in support and in opposition to the motion, and rest the case upon the ground that there was no such

4. VERDICT: misconduct of juror.

abuse of discretion in the court below as to justify our interference. But without entering upon this discussion, 5. —— Recital in record. it is sufficient to say that the record does not show that the juror was examined *under oath* as to whether he had formed or expressed such unqualified opinion or belief; and upon the authority of *Stewart* v. *Ewbank*, 3 Iowa, 191 ; and *The State of Iowa* v. *Shelledy*, 8 Id., 477, it is therefore held that defendant cannot take advantage of the fact now urged, as a ground for a new trial. The recitation in the journal entry, that "the jury was impanneled, *tried* and sworn," is not sufficient to show that they were examined under oath. That declaration would be met if they were examined as jurors generally are under our practice, without being sworn.

IV. Was the verdict warranted by the evidence? It seems that, according to the canvass by the city council, 6. NEW TRIAL: evidence. there were 955 votes cast, of which defendant received 478, and plaintiff 477. To sustain the charges made on either side, of illegal voting and rejection of proper ballots, and various other matters alleged by the parties respectively and denied, a great number of witnesses were introduced, and much conflicting testimony. It is simply one of those cases where it is exceedingly difficult to arrive at a result entirely satisfactory, or with a fair cer-' tainty of having reached the exact truth. The jury, from all these facts, might, we think, fairly have found in favor of either party. It was their province to weigh the testimony, judge of the credibility of witnesses (and we should conclude that this they had to do in this instance), and from all the facts and circumstances declare the result of their investigations. This they have done with apparent candor, and a due regard to the testimony and the parties interested. We do not think it is a case in which we can interfere. There is no rule giving us power to review the action of the District Court in refusing a new trial, when placed upon

the ground which would justify us in disturbing this verdict.

Affirmed.