Taylor v. Carr.

J. WILL TAYLOR *v.* ALVIS J. CARR.*

AND

W. C. ADAMS *v.* HUGH McDONALD.

(*Knoxville.*   September Term, 1911.)

1. CONTESTED ELECTIONS.   Cannot be determined by city
   council without previously established rules under statute
   conferring the power under previously established rules.

Under the charter of the town of La Follette (Acts 1897, ch.
   161), which provides (by its eighth section) that the city coun-
   cil shall be the sole judge of the qualification and election of
   its own members, and (by its thirteenth section) that a contest
   over the election of any city officer shall be heard and determined
   by the city council under such rules as it shall have previously
   established for such hearing, the council has no primary right
   or jurisdiction to determine the contested election of a mem-
   ber of the council, where it has not previously established any
   rules or methods for conducting such a contest, as required by
   the charter.   (*Post, pp.* 242, 243.)

Acts cited and construed:   Acts 1897, ch. 161, secs. 8 and 13.

Cases cited and approved:   Veile v. Funck, 17 Iowa, 365; Darrow
   v. People, 8 Colo., 417.

2. SAME.   Supervisory jurisdiction of circuit court over con
   tested election cases before a city council.

The circuit court has supervisory jurisdiction by *certiorari* over
   the proceedings of a city council in a contested election case.
   (*Post, p.* 243.)

Case cited and approved:   Staples. v. Brown, 113 Tenn., 643.

3. SAME.   In circuit court, where no other provision is made.
   Where no other provision is made for the contest of an election,
   it is triable in the circuit court, under section 6063 of Shan-

---

* Superintending control and supervisory jurisdiction of superior
over inferior courts, see note in 51 L. R. A., 33.

Taylor v. Carr.

non's Code; and where the primary jurisdiction of a city council is ineffective because of its failure previously to establish rules for conducting such contests, as required by its charter, the primary jurisdiction is in the circuit court. (*Post, pp.* 243, 244.)

Code cited and construed: Sec. 6063 (S.); sec. 4997 (M. & V.); sec. 4225 (T. & S. and 1858).

Case cited and approved: Baker v. Mitchell, 105 Tenn., 610.

4. **MUNICIPAL CORPORATIONS. City council of La Follette is composed of the aldermen, and mayor is not a member.**
Under the charter of the town of La Follette (Acts 1897, ch. 161, as amended by Acts 1901, ch. 460), the city council is composed only of the aldermen, and the mayor is not a member or part of it. (*Post, p.* 244.)

Acts cited and construed: Acts 1897, ch. 161; Acts 1901, ch. 460.

5. **CONTESTED ELECTIONS. Original jurisdiction is in circuit court, and only cumulative jurisdiction is in city council, when.**
Under the charter of the town of La Follette (Acts 1897, ch. 161) providing (by its thirteenth section) that a contest over the election of any city officer shall be heard and determined by the council, under such rules as it shall have previously established for such hearing, and under section 6063 of Shannon's Code giving the circuit court jurisdiction of contested elections where such jurisdiction is not conferred upon some other tribunal, the city council is not a "judicial tribunal," within the sense and meaning of said section, so that the circuit court has original jurisdiction of a contested election for mayor of such town; for the jurisdiction conferred upon the city council is merely cumulative, and the circuit court continues to hold its original jurisdiction. (*Post, pp.* 244, 245, 249.)

Code cited and construed: Sec. 6063 (S.); sec. 4997 (M. & V.); sec. 4225 (T. & S. and 1858).

Acts cited and construed: Acts 1897, ch. 161, sec. 13.

Taylor v. Carr.

Cases cited and approved:   Crump v. Williams, at Jackson, April
term, 1910; People, ex rel., v. Hall, 80 N. Y., 117; McVeaney v.
Mayor, 80 N. Y., 185; Veile v. Funck, 17 Iowa, 365; State, ex
rel., v. Kraft, 18 Ore., 550; Commonwealth v. Allen, 70 Pa., 469;
State, ex rel., v. Kempf, 69 Wis., 470; State v. McKinnon, 8
Ore., 492; Kendell v. Camden, 47 N. J. Law, 64; State, ex rel., v.
Fitzgerald, 44 Mo., 425; People v. Londoner, 13 Colo., 303; State,
ex rel., v. Anderson, 26 Fla., 254; Commonwealth v. McCloskey,
2 Rawle (Pa.), 309.

6. SAME.   Grounds may be stated in two aspects based upon
   the invalidity and the validity of the election.
   Where the petition in a contested election case, over the office of
   mayor, asks, first, that the election be declared void, and the
   petitioner be declared the incumbent holding over; and, sec-
   ondly, that petitioner be declared the successful candidate, in
   case the court should hold that the election was not invalid,
   but was a legal election, the grounds of the contest are stated
   in two aspects, which may be united in one petition.   (*Post, pp.*
   245, 247.)

   Case cited and approved:   Maloney v. Collier, 112 Tenn., 78, 102,
   103.

7. ELECTIONS.   To be held under the Dortch law in cities in
   civil districts of 2,500 population.
   A city election in an incorporated town in a civil district con-
   taining a population of twenty-five hundred is properly held
   under the Dortch law (Acts 1890, ex. ses., ch. 24, sec. 2; Acts
   1891, ch. 225; Acts 1897, ch. 17), and not under the uniform
   ballot law (Acts 1891, ex. ses., ch. 21; Acts 1893, ch. 101.
   (*Post, p.* 246.)

8. CONTESTED ELECTIONS.   Petition alleging  petitioner's
   election by a majority vote, wrongfully revised by commis-
   sioners of election so as to give contestee a majority, is not
   subject to demurrer.
   Where the petition  in a contested election case, over the office
   of mayor, alleges that the returns made up by the election

Taylor v. Carr.

officers under the Dortch law (Acts 1890, ex. ses., ch. 24; Acts 1891, ch. 225; Acts 1897, ch. 17), then and there in force, gave to the petitioner a majority of the votes, that he received 190 votes and the contestee 185 votes, but that, when these returns were sent to the commissioners of elections, they assumed to go behind the poll lists and tally sheets, to examine the original ballots, and to throw out votes, and that, by such action, the result was so changed as to give the contestee a majority, to whom a certificate was thereupon issued, a demurrer to such petition upon the alleged ground that it shows no case in that it admits that the contestee received a majority of the votes cast under the Dortch law is bad, because the petition does not admit what the demurrer assumes that it admits. (*Post, pp.* 246-248.)

9. **SAME.   Not jury cases.**

Election contests are not jury cases.   (*Post, pp.* 249, 250.)

Cases cited and approved:   Blackburn v. Vick, 2 Heisk., 377, 383; Moore v. Sharp, 98 Tenn., 491, 494; Shields v. McMahan, 112 Tenn., 4, 5 (and authorities cited); Corey v. Lugar, 62 Ind., 60; Pedigo v. Grimes, 113 Ind., 148; Hughes v. Holman, 23 Ore., 481; Ewing v. Filley, 43 Pa., 384; Goran v. Jackson, 32 Ark., 553; Wise v. Martin, 36 Ark., 305; Ford v. Wright, 13 Minn., 518.

10. **JURY TRIALS.   Amendment of statute as to method of call-ing for jury, but not so as to extend the number of jury cases.**

The statute (Acts 1875, ch. 4), providing a method of demand-ing a jury in cases then triable by jury, was amended by a sub-sequent statute (Acts 1889, ch. 220), as to the method of call-ing for a jury, but not so as to extend the number of jury cases. (*Post, p.* 250.)

Acts cited and construed:   Acts 1875, ch. 4; Acts 1889, ch. 220.

11. **SAME.   Order placing contested election case upon the jury docket may be changed to nonjury docket at a subsequent term; practice points; "merits of controversy."**

The action of the trial judge in a contested election case in

Taylor v. Carr.

changing the case from the jury docket to the nonjury docket, at a subsequent term, after an order had been made at a prior term placing it upon the jury docket, but on the faith of which no steps had been taken by either party, affecting the merits, is not erroneous, because election contests are not jury cases, and such former order was simply a point of practice in the preparation of the case which was in the discretion of the court, since the rule that trial judges cannot, at subsequent terms, change orders made at former terms, does not apply to mere practice in the preparation of the case, but only to the "merits of the controversy," which term is not confined to the points in actual litigation, but includes orders on points of practice, where steps affecting the merits have been taken upon the faith of such orders. (*Post, pp.* 250, 251.)

12. **CONTESTED ELECTIONS. Petition charging petitioner's election on the face of the returns, and that the returns were illegality changed into a majority for contestee, states a case for petitioner.**

A petition in a contested election case, over the office of mayor, which charges that on the face of the returns the petitioner received a majority of five, and that the commissioners of election illegally assumed to purge the returns by casting out sixteen to eighteen ballots, which had been cast for the petitioner, thereby changing the result into a majority in favor of the contestee, states a case in favor of the petitioner. (*Post, p.* 251.)

13. **SAME. Amendment of answer will not be allowed after petitioner has closed his evidence, when.**

Where, after the trial of a contested election case had progressed two days, after a great many witnesses had been examined, and a great volume of evidence had been introduced, and after the petitioners had closed their evidence, and after the defendants had begun their testimony, the defendants asked leave to amend their answer, a denial of the leave to amend was proper, as the amendment was offered too late. (*Post, pp.* 251-253.)

14. SAME. Amendment of answer involving the right of commissioners of elections to go behind the returns is without merit.

The commissioners of elections have no power to go behind the returns, and a proposed amendment to the defendant's answer, based on the theory that they had such power, is without merit. (*Post, p.* 253.)

15. SAME. Amendment inviting court to recount ballots, without allegation of the object of the recounting, is insufficient, and is properly refused.

Where the proposed amendment to the answer in a contested election case in effect invited the circuit court to make a recount of the ballots generally, without any allegation as to the particular matters to be determined by such recounting, other than the general result of the election, such proposed amendment was insufficient to enable the court to exercise that power, and was properly refused by the trial judge. (*Post, p.* 253.)

16. SAME. Commissioners of elections cannot go behind the returns and recount the ballots, but must preserve the ballots under seal for use in a contest.

Under Acts 1907, ch. 436, requiring, by section 15, that the officer holding the election shall deliver the polls or returns of the election, sealed as received, together with the ballots cast; to the commissioners of elections, and requiring, by section 16, that, on the first Monday after the election, the commissioners of elections shall file the said polls and returns at the courthouse, and certify in writing the results shown thereby, and deliver to each person elected a certificate of election, and requiring, by sections 17 and 18, the preservation of the poll lists and tally sheets, the duties of the commissioners of elections are only ministerial, and not judicial, and they cannot go behind the returns and examine and recount the ballots, but they must preserve the ballots, under seal as delivered to them, for the use of the parties in the case of a contest. (*Post, pp.* 253-257.)

Taylor v. Carr.

Code cited and construed: Secs. 1268, 1270-1277, 1279, 1280, 1283 (S.).

Acts cited and construed: Acts 1907, ch. 436, secs. 15-18.

Cases cited and approved: State, ex rel., v. Wright, 10 Heisk., 237, 252-255; State, ex rel., v. Board of Inspectors, 6 Lea, 12, 24, 25; State, ex rel., v. Gossett, 9 Lea, 644.

17. **ELECTIONS.** Ballots perforated by mistake and not so marked for identification are valid.

Ballots perforated by mistake, and not so marked by the voters for purposes of identification, are valid. (*Post, pp.* 258, 259.)

. FROM CAMPBELL.

Appeal from the Circuit Court of Campbell County.— G. Mc. HENDERSON, Judge.

LINDSAY, YOUNG & SMITH, JOUROLMON, WELCKER & SMITH, L. H. CARLOCK, and JOHN P. ROGERS, for plaintiffs in error.

W. A. OWENS, WRIGHT & JONES, AGEE & PETERS, and JESSE L. ROGERS, for defendants in error.

MR. JUSTICE NEIL delivered the opinion of the Court.

These are consolidated cases brought from the circuit court of Campbell county. They were instituted in that court by the defendants in error, Carr and McDonald,

125 Tenn.—16

against the plaintiffs in error, Taylor and Adams, to contest an election for city offices of the city of La Follette, held on the 29th of March, 1910.

The commissioners of election gave the certificate of election to Taylor as successful candidate for mayor of the city, and to Adams as successful candidate for alderman of the Third ward. The unsuccessful candidates thereupon filed these suits, for the purpose of contesting the election, in the circuit court.

The petition was met by a demurrer, under which certain questions were made which we shall now state and consider.

There were other questions which we shall not refer to until after we have set forth the substance of the petition.

For the consideration of the points we shall first mention it is not necessary that the petition shall be given with any more particularity than as above.

The question is raised by the second, third, and sixth grounds of demurrer, that the primary jurisdiction of these contests was in the city council of the city of La Follette, and that the circuit court had no original jurisdiction.

In order to a proper understanding of this question it is necessary to make the following excerpts from the charter of La Follette (chapter 161 of the Acts of 1897):

Section 8, among other things, contains the following:

"The city council shall be the sole judge of the qualification and election of its own members, and shall have

the power to determine the rules of its own proceedings, punish its members for disorderly conduct, and with the concurrence of four of its five members-elect, may expel a member."

Section 13 contains the following:

"If the election of any officer shall fail in consequence of an equal number of votes having been cast for two or more persons for the same office, the city council shall cast lots among the persons so voted for, in such manner as it may prescribe, by resolution, and the person who shall be successful according to the terms of such resolution in the casting of lots shall be declared elected. If the election of any city officer shall be contested, the contest shall be heard and determined by the city council under such rules as the said council shall have previously established for such hearing."

Hugh McDonald claims to have been elected as a member of the city council, and under the provisions of section 8 that body would have the primary right to pass upon his controversy, in view of the language used in the section referred to, to the effect that the council shall be "sole judge" of the matter (*Darrow* v. *People,* 8 Colo., 417, 8 Pac. 661), subject to the supervisory jurisdiction of the circuit court, under the writ of *certiorari* (*Staples* v. *Brown,* 113 Tenn., 643, 85 S. W., 254). The jurisdiction of the council, however, could not be invoked, because it does not appear that it had established any rules or methods for conducting a contest, as it was required to do under section 13. *Veile* v. *Funck,* 17 Iowa, 365. There was, therefore, no other tribunal to

which application could be made, except the circuit court, under section 6063 of Shannon's Code; no provision having been made by statute for such contests other than under said section. *Baker* v. *Mitchell,* 105 Tenn., 610, 59 S. W., 137.

If the mayor of La Follette were also a member of the city council, the same rule above indicated as to Hugh McDonald would apply to Carr, since he was a candidate for the office of mayor. It is insisted by defendant Taylor that the mayor is a member of the city council. In view of what has been said in disposing of this part of the case as to McDonald, it is perhaps unnecessary to say that, upon a very careful examination of the charter above referred to, and the amendment of 1901 (Acts 1901, ch. 460), we are of the opinion that the city council is composed only of the aldermen, and the mayor is not a part of it. The city council is not a judicial tribunal, within the sense and meaning of Shannon's Code, section 6063.

In the case of *Crump* v. *Williams,* decided by this court at the April term, 1910, at Jackson, it was held that language in the charter of the city of Memphis similar to the last sentence quoted from section 13, supra, did not confer exclusive original jurisdiction upon the city authorities to dispose of the contest, but that the jurisdiction was merely cumulative, and the circuit court had original jurisdiction. The weight of authority in other States is to the same effect. *People, ex rel. Hatzell,* v. *Hall,* 80 N. Y., 117; *McVeaney* v. *Mayor,* 80 N. Y., 185, 36 Am. Rep., 600; *Veile* v. *Funck,* supra;

*State, ex rel.,* v. *Kraft,* 18 Or., 550, 23 Pac., 663; *Commonwealth* v. *Allen,* 70 Pa., 469; *State, ex rel.,* v. *Kempf,* 69 Wis., 470, 34 N. W., 226, 2 Am. St. Rep., 753; *State* v. *McKinnon,* 8 Or., 492; *Kendell* v. *Camden,* 47 N. J. Law, 64, 54 Am. Rep., 117; *State of Missouri, ex rel. Turner,* v. *Fitzgerald,* 44 Mo. 425; *People* v. *Londoner,* 13 Colo., 303, 22 Pac., 764, 6 L. R. A., 444; *State, ex rel.,* v. *Anderson,* 26 Fla., 254, 8 South., 1; *Commonwealth* v. *McCloskey,* 2 Rawle (Pa.), 369.

The circuit court, therefore, had original jurisdiction of the contest instituted by Carr; no other court being vested therewith.

We shall now state, with as much brevity as possible, the substance of the petition. Before doing this, however, it should be stated that the petition is filed with a double aspect.

First, in Carr's case, that the election may be declared void, and the petitioner be declared the incumbent, inasmuch as he was mayor at the time the election of March 29, 1910, was had, and was ousted by Taylor without authority of law; and, secondly, for the purpose of having Carr declared the successful candidate in case the court should hold that the election was not invalid, but was a legal election. The petition stated the contest in two aspects, within the authority of *Maloney* v. *Collicr,* 112 Tenn., 78, 102, 103, 83 S. W., 667.

We shall now confine our attention in what immediately follows to the mayor's contest, and state the contents of that petition.

It is alleged that an election was held on the date above mentioned for the election of mayor and the members of the city council of the city of La Follette; that the officers holding the election, being doubtful as to whether the election should be held under the Dortch law or under the uniform ballot law, conducted two elections at the same place—that is, one under each method; that the election under the uniform ballot law was void, because registration certificates were demanded of the voters, and that thereby ninety-six persons were prevented from voting, which would have been sufficient to change the result; and that, of these ninety-six persons, forty-one would have voted for contestant Carr.

It is alleged in terms that the election under the Dortch law was invalid, because this law did not control; but it is stated as a fact that the city of La Follette is within a civil district containing 2,500 population. Therefore, while the conclusion of law announced in the petition is that this election was void because the city of La Follette did not fall within the law, yet the statement of fact just indicated shows that did fall under the law. Indeed, both sides now agree that the election was properly held under the Dortch law—that is, that the Dortch law controlled, and not the uniform ballot law.

It is charged that the returns made up by the election officers under the Dortch law gave to the petitioner, Carr, a majority of the votes—that is, Carr 190 votes and Taylor 185 votes; but that, when these returns were sent to the commissioners of election, they assumed to

go behind the poll lists and tally sheets, examine the original ballots, and throw out votes, and, so acting, the result was so changed as to give the defendant Taylor a majority, and that thereupon they issued the certificate to him.   This action is complained of.

The petition sets out the names of various persons who were charged to have been illegal voters, who cast their ballots for contestee Taylor.

Complaints are made of the place of holding the election in the Third ward, the location of the registrars with respect to the location of the officer holding the election at that precinct, and the judges; also the mode of entrance into the voting places, and of the fact that deputy sheriffs were placed near the entrance.

There are various charges with respect to the election conducted on the uniform ballot plan; but, inasmuch as both sides concede, as we have already stated, that the election should have been conducted under the Dortch and registration law, we need not mention this matter further than to say that it was charged that the petitioner was found on the face of the returns to have less votes than the defendant, because of the fact that his voters were kept away by the illegal demand for registration certificates, and it is further charged in respect of this election that on a proper recount of the votes there would be a majority of thirty in favor of petitioner Carr.

The foregoing general statement is sufficient for the disposition of the demurrer, which shall now be stated.

Taylor v. Carr.

The first ground of demurrer makes the point that the petition shows no case, because it admits that Taylor received a majority of eighteen votes in the election conducted under the uniform ballot law, and also a majority of the votes cast under the Dortch and registration law. The demurrer then continues: "Therefore petitioner fails to make out a case upon the face of his petition entitling him to contest said election, and he is not aided by the allegations that other parties residing within said municipality failed to vote, because it is shown by said petition that a greater number failed to vote than was claimed by petitioner would have voted for him; therefore, failing to show upon the face of the petition that had they voted for him as claimed in the petition," he would have been successful. "If the others not voting had voted against him, the result would not have been changed." The language we have quoted refers alone to the case attempted to be made under the election held under the uniform ballot law, which election is not now before the court for consideration. As to the election under the Dortch and registration law, the petition does not concede that the defendant received the majority of votes, but charges directly the reverse; that is, it charges that on the face of the returns the petitioner received a majority of five votes, and that the commissioners of elections illegally went behind the returns and attempted to throw out votes, and thus unlawfully changed the result.

The second, third, fourth, and sixth grounds of demurrer we have already considered, as raising the

Taylor v. Carr.

point that the circuit court had no jurisdiction of the contest. The fifth is not insisted upon, and we need not notice it. The seventh ground has been practically disposed of in what we have already said.

The trial judge overruled the demurrer and proceeded to hear the case.

He adjudged that Carr was elected mayor of the city, and McDonald elected to the city council. Thereupon the defendants below, Taylor and Adams, appealed to this court, and have here assigned errors.

These errors are divided into errors of law and errors of fact.

The first error of law assigned is that which questions the jurisdiction of the circuit court, which we have already considered.

The second assignment of law is based upon the fact, first, that the trial judge declined to allow the case to be tried before a jury; and, secondly, that after the case had been placed upon the jury docket, on application of the defendants below at a former term of the court, this order was revoked at a subsequent term, and the case placed on the nonjury docket.

This assignment must be overruled.

Election contests are not jury cases. *Shields* v. *Mc-Mahan,* 112 *Tenn.,* 4 and 5, 81 S. W., 597, and authorities cited; *Moore* v. *Sharp,* 98 Tenn., 491, 494, 41 S. W., 587; *Blackburn* v. *Vick,* 2 Heisk., 377, 383. To same effect, see *Pedigo* v. *Grimes,* 113 Ind., 148, 17 N. E., 700; *Corey* v. *Lugar,* 62 Ind., 60; *Hughes* v. *Holman,* 23 Or., 481, 32 Pac., 298; *Ewing* v. *Filley,* 43 Pa., 384; *Wise*

v. *Martin,* 36 Ark., 305; *Goran* v. *Jackson,* 32 Ark., 553; *Ford* v. *Wright,* 13 Minn., 518 (Gil., 480).

Plaintiffs in error insist that the rule was changed by chapter 220 of the Acts of 1889. This is a mistaken view. The act referred to was an act to amend chapter 4 of the Acts of 1875. That chapter provided a method of demanding a jury in cases "now triable by jury." Chapter 220 of the Acts of 1889 simply amended the method. It did not purport to extend the number of jury cases. The two acts must be construed together, and, although there is some language in the latter act which, standing alone, would seem to favor the plaintiffs in error's contention, yet when taken in connection with the former act, which the latter was intended to amend, it is perfectly clear that the purpose was such as we have just indicated, and that purpose only; that is, merely to regulate the method of calling for the jury in jury cases.

As to that part of the assignment which complains of the action of the trial judge in changing the case from the jury docket to the nonjury docket, at a subsequent term, after an order had been made at a prior term placing it upon the jury docket, there was no error. No right connected with the merits of the case was determined, but simply a point of practice in the preparation of the case. This was within the discretion of the court. The rule that trial judges cannot, at subsequent terms, change orders made at former terms, does not apply to mere practice points, but only to the merits of the controversy. When we say "merits of the controversy," we do not confine the observation merely to points in actual litigation.

Of course, if the trial judge should rule out a deposition at some former hearing, this would be so interconnected with the merits as that he could not change the order at a subsequent term. We give this merely as an illustration. We may further add that if, after the trial judge has made an order upon a point of practice, and on faith of that order steps have been taken by either party affecting the merits, the order could not be changed at a subsequent term.

The third error of law assigned involves two propositions: First, that the petitioner Carr does not state sufficient facts to show that he was elected; secondly, that he does not charge that the election was valid.

We have perhaps sufficiently disposed of this matter in what we have said touching the demurrers. However, as to the first point, the petition charges that, on the face of the returns, the petitioner received five majority, and that the commissioners of election illegally assumed to purge the returns by casting out sixteen to eighteen ballots which had been cast for the petitioner, thereby changing the result into a majority in favor of contestee Taylor. This states a case in favor of the petitioner.

That part of the assignment which makes the point that the petition charges that the election was void we have already sufficiently treated in another connection.

The fourth error of law assigned is that the trial judge "erred in declining to allow defendants to amend their answer, so as to aver that one of the clerks in the second ward gave to contestant Carr four tallies too many, and that the other clerk added on a like number, and erased

from Taylor's name that number-of tallies, which amendment should have been allowed after the admission for the first time by contestant's counsel that the election under the Dortch law was legal and valid."

The trial of the cause began on August 21, 1911. On August 23d, after a great many witnesses had been examined, and a vast volume of evidence introduced the defendants below asked leave to insert, at the end of the first sentence, in paragraph 9, on page 5, of their answer, the following:

"Because it was shown that the tally sheets from the second ward did not record the true result, and by virtue of the provisions of the act of the Legislature of 1907 making the ballots a part of the returns, the election commissioners compared said ballots and found that one clerk had given the petitioner Carr credit for more votes than he had received, which occurred by reason of one of the clerks having more tallies than the other, and in order to make the books appear alike the other clerk added the additional tallies; that said election commissioners also compared the ballots in all wards, with the result that the defendant received 193 votes and the petitioner 175 votes. The defendant avers that the circuit court also has the right and should compare said ballots, so as to ascertain the true vote between petitioner and defendant."

This amendment was offered after the petitioners had closed their evidence, and after the defendants had begun their testimony. The trial judge held that the amend-

ment came too late, and likewise that it was without merit.

As to the merits:

The amendment was based on the theory that the commissioners of election had the right to go behind the returns and investigate the ballots, and was brought forward for the purpose of enabling the trial court to pass upon the validity of such action on the part of the commissioners, and also to enable the court itself to recount the ballots, and decide which party was elected. The commissioners had no power to go behind the returns, and an amendment based on the theory that they had such power could not be otherwise than without merit.

As to the last sentence of the amendment, if it could be separated from what goes before, it is simply an invitation to the court to make a recounting of the ballots generally, without any averment as to the particular matters to be determined by such recounting, other than the general result of the election; in other words, an invitation to the court to take the place of the original election officials. We do not think that on such general allegation or request the court could exercise that power. There would have to be some specific points indicated which the court should try by the ballots. Moreover, in the present case, it appears that the ballots were not sealed, as required by Acts 1907, ch. 436, section 15, before being delivered to the commissioners of election, and, for that reason, they could not be examined, unless it should be made to appear with great clearness that

they had been so kept as not to be the subject of interference or change. It does not appear from the evidence that the ballots in the present case had been so kept. The commissioners of election testify that while in their possession they were not altered, but they were placed in the safe of Mr. Allen, the county judge of the county, not sealed up, and subject, of course, to interference by any one who might have access to that safe through Allen, and the testimony of the latter was not taken. Likewise it is not clear what care was exercised over the ballots after the election, and before they were handed to the commissioners of election. Under these circumstances, even if the amendment had been granted, it would have been futile.

We are of the opinion, therefore, that the trial judge acted correctly in refusing to grant the amendment, both because it came too late, and also because it was without merit.

We have said that the commissioners of election had no authority to go behind the returns and recount the ballots. The contestees insist that they had such power, because, under Acts 1907, ch. 436, section 15, the ballots were for the first time required to be preserved and placed in the hands of the commissioners of election. That section reads: "It shall be the duty of the officer holding the election to deliver the polls or returns of the election sealed as received, together with the ballots cast in said election, to the said commissioners of election, not later than 12 o'clock noon on the first Monday after the election."

Under the chapter referred to the commissioners of election appoint, not only the officer to hold the election, but the judges and the clerks as well for each voting precinct in their county. The duties of the judges and clerks are not prescribed in this act, but by other legislation.

Section 1268 of Shannon's Code provides that the returning officer, by whom is meant the officer holding the election, shall receive the ballot in the presence of the judges. These latter officers pass upon the qualifications of the voter. Sections 1270 to 1276, inclusive. When the officer receives the ballots he is required to call the name of the voter in a distinct voice, and the clerks of the election must take down on separate lists or books the name of every person voting, and must attest the correctness of these lists under their hands. Section 1277. When the election is finished, the returning officers and judges must, in the presence of such of the electors as may choose to attend, open the box, and read aloud the names of the persons which shall appear in each ballot, and the clerks at the same time must number the ballots, each clerk separately. Section 1279. If a void ticket is voted, it is the duty of the judges to reject it when the votes are counted. Section 1280. Formerly it was the duty of the officer holding the election to compare the polls at the courthouse on the first Monday after the election, and deliver to each person elected a certificate of his election. Section 1283. Under some statutes passed after the Code, and especially under chapter 436 of the Acts of 1907, this matter was changed,

and it became the duty of the officer holding the election, as provided by section 15, supra, to deliver "the polls or returns of the election sealed as received, together with the ballots cast in said election" to the commissioners of election not later than 12 o'clock noon on the first Monday after the election. Section 16 provides: "That on the first Monday after the election it shall be the duty of the commissioners of election to file the said polls and returns at the courthouse, and to certify in writing, signed by at least two of them, the result as shown by said polls or returns, and to deliver to each person elected a certificate of his election." In order to enable the commissioners of election to perform this duty, they must have before them, not only the poll lists, but also the tally sheets of clerks of elections, because on the latter appear the number of votes received by each candidate. It is the duty of the judges and clerks and of the precinct returning officers to certify to the correctness of these papers. From these papers—that is, from the poll lists and tally sheets—the commissioners of election must ascertain by calculation who has received the greater number of votes, and will accordingly deliver the certificate of election. In this respect they have succeeded to the duties originally devolved upon the officers holding the election in each precinct. They cannot any more examine the ballots than could the officer holding the election under prior statutes. The ballots are passed upon by the judges of election in each voting precinct as they are received, and later as they are counted out. The duties of the com-

missioners of election are only ministerial. Such officers cannot recount the ballots. In performing the duties referred to they are only final returning officers, and such officers have no judicial powers. *State, ex rel.,* v. *M. J. Wright,* 10 Heisk., 237, 252 to 255; *State, ex rel.,* v. *Board of Inspectors,* 6 Lea, 12, 24, 25; *State, ex rel. Anderson,* v. *Gossett,* 9 Lea, 644. If the commissioners of election should undertake to recount the ballots, they would be performing the duties which are by law assigned to the judges of election, or exercising the functions of a court in trying an election contest. The only purpose of including the ballots in section 15 was to preserve them for the use of parties in the case of a contest. No directions are given in the act as to the method of their preservation, sections 16 to 18, inclusive, referring to the lists of voters or poll lists and the tally sheets; that is, those papers which must appear under the certificate of the officers holding the election and the judges and clerks. Under section 15 the ballots must be delivered to the commissioners of election sealed up, and it necessarily results that they must be kept by these officers in that form until needed upon a contest of election, and then in case of contest should be opened only in some form fair to both sides, after due notice, and after the adoption of proper precautions to prevent spoliation or mutilation.

In what has been said we have disposed of the first, second, and third assignments of error upon the facts, and need not refer to them further.

125 Tenn.—17

The fourth error assigned on the facts is: "That the circuit judge was in error in finding that ten or twelve ballots of the Third ward had been cast for Carr and McDonald, and unlawfully rejected, and not counted, because of having been perforated, whereas the proof shows that said ballots, in addition to having been perforated, also bore other marks which disfigured and rendered said ballots illegal and void."

It is unnecessary to discuss this assignment in disposing of Carr's contest, because it is evident from what has been said that as to him the case may be determined upon the face of the returns; there being no pleading on the part of the defendants to impeach these returns. On the basis Carr was elected by five votes. However, it is necessary to consider this assignment in disposing of the case of McDonald because on the face of the returns it appears that he received for alderman only sixty-three votes, while his opponent, Adams, received sixty-seven votes, leaving a majority of four for Adams.

It appears from the evidence that there were sixteen ballots thrown out, which were not included in those sent to the commissioners of election, but were left lying upon a table. There is much evidence on the part of the defendants, indicating that these ballots were marked both for Carr and his opponent, and for McDonald and his opponent, and hence could not be counted for either; likewise that part of them were not marked at all, and part marked in such a way as that it could not be told for whom the vote was intended. We have considered all of this evidence, and are of the opinion that it is too

Taylor v. Carr.

indefinite to meet the clear and distinct statement on the part of the witnesses for contestant that the ballots were marked for McDonald and Carr. The trial judge found that twelve of them were so marked. We find that at least eight of them were so marked, and perhaps twelve. It results that these ballots were improperly thrown out. Counting them for McDonald, he is found to have received a majority of the votes. These ballots are referred to in the record as perforated ballots; but we think the perforation was made by mistake. We are quite clear in our conclusion that they were not marked by the voters for purposes of identification.

It results that the judgment of the trial court is affirmed, both as to Carr and McDonald. The contestees will pay the costs of the appeal. The costs of the court below will be paid as fixed by the trial court.