IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## MIDDLE DIVISION

*Nashville.* December Term, 1915.

STATE *ex rel.* TIMOTHY *et al. v.* H. E. HOWSE, MAYOR, *et al.*

(*Nashville.* December Term, 1915.)

1. **APPEAL AND ERROR.** Assignment of error. Sufficiency.
An assignment of error complaining that the court erred in not holding a statute unconstitutional, but not pointing out any grounds, is too general for consideration. (*Post, p.* 74.)

Acts cited and construed: Acts 1915, ch. 11.

2. **MUNICIPAL CORPORATIONS.** Officers. Ouster Act. Applicability.
The Nashville city charter (Priv. Acts 1913, ch. 22) provides for recall elections, section 32 declaring that such remedy shall be cumulative; hence the Ouster Act (Pub. Acts 1915, ch. 11), may be taken advantage of to oust delinquent officials. (*Post, p.* 75.)

134 Tenn.]     (67)

State ex rel. v. Howse.

Acts cited and construed:  Acts 1913, ch. 22, sec. 32.

Case cited and approved:  State ex rel. v. Howse, 132 Tenn., 452.

3. **JUDGES.    Ouster proceedings.    Interest.**

In a proceeding to oust public officers under Pub. Acts 1915, ch. 11, the fact that the judge before whom proceeding was begun suspended defendants from office does not preclude him from sitting in the trial on the merits; the practice being as where a chancellor in an injunction suit issues an interlocutory order.  (*Post, pp.* 75, 76.)

4. **TRIAL.    Proceedings.    Severance.**

In a proceeding to oust more than one municipal officer the question of severance rests in the discretion of the trial court. (*Post, p.* 76.)

Case cited and approved:  Tyson v. Netherton, 53 Tenn., 19.

5. **MUNICIPAL CORPORATIONS.    Officers.    Ouster.    Evidence.**

In a proceeding to oust a municipal officer brought under Pub. Acts 1915, ch. 11, evidence of acts of malfeasance done during the officer's term, but before passage of the act, is admissible; the act making nothing illegal which was not illegal before.  (*Post, p.* 76.)

6. **MUNICIPAL CORPORATIONS.    Ouster of mayor.    Proceedings.    Evidence.**

In a proceeding under Pub. Acts 1915, ch. 11, to oust a municipal officer for misconduct in office, evidence of his acts of malfeasance committed in a term previous to the pending term is admissible, particularly where on his first election he promised to enforce the laws, while on the latter he was supported by the element not desiring law enforcement.  (*Post, pp.* 76-80.)

Cases cited and approved:  Day v. Sharp, 128 Tenn., 340; State v. Leach, 60 Me., 58; Rankin v. Jauman, 4 Idaho, 53; State ex rel. v. Bourgeois, 45 La. Ann., 1350; State ex rel. v. Megaarden, 85 Minn., 41.

Cases cited and distinguished:  Territory v. Sanches, 14 N. Mex., 493; State v. Welsh, 109 Iowa, 19.

State ex rel. v. Howse.

7. **JURY. Jury trial. Right to "summary proceeding."**
Const. 1870, art. 1, sec. 6, declares that the right of trial by jury shall remain inviolate. Pub. Acts 1915, ch. 11, providing for the ouster of unfaithful municipal officers, declares that the proceeding shall be summary. *Held*, in view of long-established construction, that the guaranty of jury trial did not preclude summary proceedings which are forms of trial in which the established course of legal proceeding is disregarded especially in the matter of trial by jury, and the legislature might validly provide that ouster proceedings should be summary, and so an officer against whom such proceedings were had is not entitled to jury trial (citing Words and Phrases, First and Second Series, Summary Proceedings). (*Post, pp.* 80, 84.)

Acts cited and construed: Acts 1915, ch. 11.

Cases cited and approved: Fields v. State, 8 Tenn. (Mart. & Y.), 168; Sevier v. Justices, Peck, 334; People ex rel. v Kipley, 171 Ill., 44; Moore v. Strickling, 46 W. Va., 515; Burke v. Jenkins, 148 N. C., 25; State ex rel. v. Henderson, 145 Iowa, 657; Woods v. Varnum, 85 Cal., 639; Govan v. Jackson, 32 Ark., 557; Taylor v. Carr, 125 Tenn., 249; Yoder v. Com., 107 Va., 823; Territory v. Sanches, 14 N. M., 493.

Cases cited and distinguished: Easton v. State, 65 Tenn., 466; Goddard v. State, 10 Tenn., 96; Rankin v. Jauman, 4 Idaho, 53.

Constitution cited and construed: Const. 1870, art. 1, sec. 6.

8. **JURY. Jury trial. Ouster proceedings.**
While Pub. Acts 1915, ch. 11, providing for the ouster of public officers, declares that the suits shall be triable as equitable actions conducted in accordance with procedure of courts of chancery, the defendant officers are not entitled to jury trial because in ordinary chancery cases material issues of fact may be submitted to a jury as a matter of right; the statute declaring that the proceeding should be summary. (*Post, pp.* 84, 85.)

Cases cited and approved: Marler v. Wear, 117 Tenn., 244; Shields v. McMahan, 112 Tenn., 4; Taylor v. Carr, 125 Tenn., 235, Davis v. State, 92 Tenn., 634.

9. **MUNICIPAL CORPORATIONS.**   Officers.   Ouster.   Proceeding.

   While Shannon's Code, sec. 6272, declares that in chancery suits testimony shall be taken in writing, oral testimony may, in a proceeding to oust an unfaithful officer under Pub. Acts 1915, ch. 11, declaring that proceedings shall be summary, be received, though the act declared that the ordinary chancery practice should be followed.   (*Post, pp.* 85, 86.)

   Cases cited and approved:   Cannon v. Wood, 34 Tenn., 177; Rose v. Wortham, 95 Tenn., 505.

   Code cited and construed:   Sec. 6272 (S.).

10. **MUNICIPAL CORPORATIONS.**   Ouster of mayor.   Defenses.

   Though a mayor of a municipality be a civil officer within Const. art. 5, sec. 5, he may, under Pub. Acts 1915, ch. 11, be ousted for misconduct in office.   (*Post, p.* 86.)

   Acts cited and construed:   Acts 1915 ch. 11.

   Case cited and approved:   State ex rel. v. Crump, 183 S. W., 505.

   Constitution cited and construed:   Art. 5, sec. 5.

11. **MUNICIPAL CORPORATIONS.**   Ouster of mayor.   Evidence.

   Defendant mayor, after being elected on a law enforcement platform in which he announced that he could and would enforce all criminal laws, allowed saloons and disorderly houses to run in open violation of State law. He also participated in a plan to evade the charter whereby a market house costing many thousand dollars was paid for by separate vouchers as if the work was less than $500, so that bids were rendered unnecessary.   Such market house was adjacent to the place of business of the mayor's firm, and it appeared that the mayor and others reaped benefits therefrom.   The mayor also allowed subordinates to sign his name to vouchers, and the practice led to the commission of gross frauds on the treasury.   *Held*, that the mayor was guilty of misconduct in office warranting his ouster under Pub. Acts, 1915, ch. 11.   (*Post, pp.* 86-91.)

   Acts cited and construed:   Acts 1915, ch. 11.

   Cases cited and approved:   State ex rel. v. Ryan, 92 Neb., 636; State ex rel. v. Wilcox, 78 Kan., 597.

State ex rel. v. Howse.

12. **MUNICIPAL CORPORATIONS.   Ouster of mayor.   Scope of proceedings.**

In a proceeding to oust a mayor from office, the court cannot decree that the board of commissioners proceed to the election of a successor; that being a matter unnecessary for determination. (*Post, pp.* 91, 92.)

FROM DAVIDSON.

Appeal from the Circuit Court of Davidson County. —THOS. E. MATTHEWS, Judge.

H. S. STOKES, W. C. CHERRY and J. G. STEPHENSON, for relators.

JOHN T. LELLYETT and E. F. LANGFORD, for defendants.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

A petition of accusation on relation of ten or more citizens was filed July 20, 1915, under the provisions of Pub. Acts 1915, chapter 11, commonly known as the Ouster Act, seeking the removal from their respective offices of H. E. Howse, mayor of the city of Nashville, and Robert Elliott, commissioner of waterworks, street cleaning, and workhouse of that city. The defendants filed answers, and proof was heard on an application made to the circuit judge to suspend both of the defendants from office, and he passed an interlocutory decree to that effect.

Later amended petitions of accusation were filed to which the defendants replied by answers.

The grounds of ouster set forth in the pleadings of the relators may be concisely stated as follows:

(1)   Substitution by defendants of administrative regulation of saloons, bawdyhouses, etc., for the charter requirement of legislative regulations by ordinance, and a willful failure to enforce the laws and ordinances in relation thereto.

(2)   The delegation to subordinates of the duty to approve vouchers, which unlawful delegation made possible the thefts shown throughout the record.

(3)   The approval of vouchers without consideration, if signed by the head of a particular department, as an unlawful delegation of duty.

(4)   Increase of offices, salaries, and various expenditures for other departments while depriving the waterworks department of its own profits necessary for the acquisition and repair of machinery to protect life and property of the inhabitants.

(5)   Padding the budget with railway park funds and other funds which were not receipts.

(6)   Failure to require affidavits to contracts, showing the contractor not a person forbidden by law to contract with the city.

(7)   Failure to keep separate bank accounts of trust funds as required by the charter.

(8)   Failure to keep separate deposits of the school funds as required by section 1007 of the City Digest.

(9)   Encroachment on trust funds.

(10)  Dealing with persons prohibited by the charter.

(11)  Wanton waste of the city's money.

Nearly all of these charges were denied by defendants in the answers filed.

A large volume of proof was taken orally before the circuit judge, and it shows that the city had been brought to a financial condition that bordered on practical bankruptcy at the date of the filing of the petition.

The trial judge on the final hearing decreed that Howse should be ousted from the office of mayor, but he reinstated Elliott. The relators have appealed, complaining of the ruling last mentioned, and Howse has appealed from the decree of ouster, and the case is before this court on the two appeals.

Pub. Acts 1915, chapter 11, is entitled "An act to provide for the removal of unfaithful public officers, and providing a procedure therefor," and it makes provision for removal of such officers of certain classes who "shall knowingly or willfully misconduct (themselves) in office or who shall knowingly or willfully neglect to perform any duty enjoined upon such officer by any of the laws of the State of Tennessee." It is provided thereby that petitions of accusation may be filed on relation of the attorney-general or other public officials or of ten or more citizens and freeholders of the State, county or city, as the case may be.

Section 6 provides:

"The proceedings under this act, whether in the circuit, chancery or criminal courts, shall be conducted

in accordance with the procedure of courts of chancery where not otherwise expressly provided herein; and all of said courts having cognizance of such proceedings are hereby given the full jurisdiction and powers of courts of equity with respect to such proceedings.

"Sec. 7. That said proceedings in ouster shall be summary and triable as an equitable action, and shall have precedence over civil and criminal actions, and shall be tried at the first term after the filing of the complaint or petition herein named: Provided the answer herein named shall have been on file at least ten days before the day of trial. A continuance may be granted either side for good cause shown, but no continuance shall be granted by an agreement of the parties."

Other provisions of the act are for the expedition suitable to a summary proceeding, such as those that the petition and answer shall constitute the only pleadings allowed, thus obviating the delay incident to demurrers, and that amendments shall not delay the trial. Answers are required to be upon oath or affirmation of the defendants.

The first assignment of error to be noticed in logical order is: That the lower court "erred in not holding the Ouster Act (chapter 11 of Acts 1915) unconstitutional." This assignment of error does not point out the ground of unconstitutionality relied on, and is too indefinite for consideration under the rules of this court governing such assignments.

It is urged that the charter of the city of Nashville provided for the removal of officers of that corporation by recall, and that the remedy of recall is exclusive, and that therefore the Ouster Act does not apply to or affect appellant.

We held in this case when it was before us last year (*State ex rel.* v. *Howse,* 132 Tenn., 452, 178, S. W., 1112) that the Ouster Act was remedial in nature, and only provided a new or additional remedy. The charter provision in respect to recall plainly sets forth that it is also a cumulative remedy, thus:

"This method of removal shall be cumulative and additional to the methods that are now or may hereafter be, prescribed by law for the malfeasance, misfeasance or nonfeasance of public officers." Priv. Acts 1913, ch. 22, sec. 32.

The contention is manifestly untenable.

The appellant next contends that the court erred in refusing to sustain his motion that the trial judge order a transfer of the case to be tried before another judge on interchange, on the ground that the circuit judge had prejudged the case when the case was before him on the motion to suspend appellant from office.

The fact that Judge Matthews, of the circuit court, heard the application, and suspended Howse, in no sense disqualified him to sit in the trial on the merits. The trial on the application to suspend was in this case (132 Tenn., 452, 178 S. W., 1112) likened to interlocutory orders passed by a chancellor in an ordinary equity proceeding, and the circuit judge is no more

disqualified by hearing such an application than is a chancellor who, when an application for extraordinary process, such as an injunction, is heard by him at chambers, grants the same, and the case comes on later to be heard on the merits.

A motion was made by Howse in the court below for a severance and separate trial. It is assigned for error that this was denied. Whether a severance shall be granted in a civil case, such as this is, is in the discretion of the trial court. *Tyson* v. *Netherton,* 6 Heisk. (53 Tenn.), 19; 38 Cyc., 1268. There is nothing' in the Ouster Act that provides to the contrary.

The appellant renews on the hearing of this appeal the insistence he urged on the former hearing in this court, to the effect that the trial judge erred in admitting in the trial on the merits testimony as to acts of malfeasance done during his pending term, but prior to the passage of the Ouster Act, January 19, 1915. We then held that the circuit judge in the trial of the application to suspend Howse properly considered such testimony, since "the act undertook to make nothing illegal that was not illegal before the act's passage, but that the act is merely remedial in its nature, and it only provides a new remedy." This holding was after full consideration, and it is upon reconsideration affirmed. A judgment of ouster under the act may therefore be predicated upon official acts transpiring prior to the passage of the act.

But the counsel of appellant point out that the circuit judge, over objections made, admitted evidence

offered by the relators of certain acts of Howse while serving as mayor in the previous term of office. It is insisted that the better doctrine is that an officer cannot be removed from office for violation of his duties in such preceding term.

This is a question upon which the authorities are divided, and so much so that it is difficult to say on which side of the exact point is the weight of authority, though perhaps it is with appellant's contention. Those cases proceed upon the fundamental notion that the re-election of the official operates to condone his past offenses.

In our view, however, the opposing cases announce the better doctrine and the one more nearly in accord with our cases and with the precedent rulings in relation to our ouster act.

The reasoning and rulings in *Day* v. *Sharp,* 128 Tenn., 340, 345, 161 S. W., 994, 995, are leveled against this underlying notion:

"The protection of the public is involved in the proceeding and judgment. Nothing in the statute suggests that electors, even, can condone the misfeasance."

The reference was to another disqualifying statute of this State.

In *Territory* v. *Sanches,* 14 N. Mex., 493, 94 Pac., 954, 20 Ann. Cas., 109 (cited in 132 Tenn., at page 459, 178 S. W., 1112), it was said:

"It is essential to determine at the outset and to bear in mind throughout the true nature and purpose

of the proceeding brought here for review. They could hardly be better expressed than in the words of KENT, J., in *State* v. *Leech,* 60 Me., 58, 11 Am. Rep., 172, in which the State was represented by its attorney-general, Hon. Thomas B. Reed:. 'The object of the removal of a public officer for official misconduct is not to punish the officer, but to improve the public service, and to free the public from an unfit officer.' To the same effect is *Rankin* v. *Jauman,* 4 Idaho, 53, 36 Pac., 502. With this clear statement, which cannot be gainsaid, as a guide, we shall be prepared to deal with the first claim of error for the defendant, discussed in the brief in his behalf, namely, that the trial court erred in holding that the defendant could be removed from office for acts done by him while holding the same office in the term immediately preceding the one in which his trial took place. The weight of authority, in numbers, is probably with the defendant on that point. But is a public officer less unfit to hold his office, or are the people less injuriously affected by his holding it because the act demonstrating his unfitness was committed on the last day of one term of office rather than on the first day of the next succeeding term? There can be but one answer to that question."

In *State* v. *Welsh,* 109 Iowa, 19, 94 N. W., 369, the court said:

"The defendant was re-elected sheriff of Johnson county at the general election of 1898, and during his second term, commencing January 1st of the year following, this action for his removal was begun. On

motion the particular averments of official misconduct and neglect of duty during the first term were stricken from the petition on the ground that removals are only allowable for acts during the term being served. The statute contains no such limitation. The very object of removal is to rid the community of a corrupt, incapable, or unworthy official. His acts during his previous term quite as effectually stamp him as such as those of that he may be serving. Re-election does not condone the offense. Misconduct may not have been discovered prior to election, and in any event had not been established in the manner contemplated by the statute. . . .

"The commission of any of the prohibited acts the day before quite as particularly stamps him as an improper person to be intrusted with the performance of the duties of the particular office, as though done the day after."

See, also, *State ex rel.* v. *Bourgeois,* 45 La. Ann., 1350, 14 South., 28, *State ex rel.* v. *Megaarven,* 85 Minn., 41, 88 N. W., 412, 89 Am. St. Rep., 534, and other cases in accord cited in note 50 L. R. A. (N. S.), 553, where also the cases holding to the contrary are collected.

Let us assume that a candidate for the mayoralty of a city is elected on pledges personally given to the electorate to enforce the laws; that he is elected, and that in consequence he gains control of the police department and the machinery for law enforcement; that near the close of his term, in order to a re-election, he

uses all the machinery intrusted to him to nullify the laws' effectiveness for the purpose of bringing to his support those interested in nonenforcement; that by use of other means known to the modern politician and shown in this record he is elected. May it be said that the arm of the law is too short to reach and remedy this wrong; that a majority of the votes so secured operates to render immune the culprit? If so, the law itself holds out a reward, under the guise of condonation, for him who subverts the law, and a temptation to perpetuate himself in office by a repetition of the acts of subversion, whether they be acts of bribery, or the use of funds gathered from law-violators as the price of their protection. We hold that the law is not to be thus made the instrument of its own undoing. Any doctrine that tends in that direction does not commend itself and should be rejected.

The appellant, as defendant below, demanded a jury to try the questions of fact, and, that demand having been denied, the ruling is assigned as error. It is argued that thereby a right guaranteed by the constitution was withheld.

Our constitution of 1870 in the embodied Declaration of Rights provides:

"The right of trial by jury shall remain inviolate." Article 1, section 6.

The same language was used to express the guaranty in the constitutions of 1834 and 1796 and its meaning as to the nature of the "right" is to be gathered from that language used in the earliest constitu-

tion.  In relation to another constitutional guaranty of trial by jury, this court said in *Eason* v. *State,* 6 Baxt. (65 Tenn.), 466, 474:

"When the constitution of 1870 was adopted, the same language which had thus been judicially interpreted was again readopted, and, we have a right to presume, with full knowledge of its uniform interpretation in the constitutions of 1791 and 1834.  This being so, this interpretation of the language becomes incorporated with the constitution of 1870 as part of the fundamental law of the state."

At an early date it was held that the provision in the constitution of 1796 did not guarantee a jury trial in every sort of case.  In *Goddard* v. *State* (1825), 2 Yerg. (10 Tenn.), 96, a bastardy case, it was held that a trial by jury was not a right of the putative father, the court saying:

"The English Magna Charta has the same provision, from which the framers of our constitution borrowed it, the construction of which has been settled as early as the time of Sir Edward Coke, who in his reading upon this statute tells us that the cases in which courts act without a trial by jury, or 'peers,' are innumerable and undefined, being done 'by the law of the land.'"

The court in that case instanced by way of example that a sustention of the defendant's contention would prevent a court of chancery decreeing upon property rights without the intervention of a jury, on demand being made for one.

134 Tenn. 6

If the proceeding for ouster prescribed by the act is one summary in nature, it is, we think, manifest that a trial by jury was not demandable as a matter of constitutional right. From very early times it has been held that the meaning of the term "summary proceedings" is such proceedings as are not according to the course of the common law. (4 Blackstone, Comm., 280); therefore not such proceedings as fell within the provision of Magna Charta above referred to.

A "summary proceeding" is defined in Bouvier's Law Dictionary to be "a form of trial in which the established course of legal proceeding is disregarded, especially in the matter of trial by jury." See, also, 7 Words and Phrases, First Series, 6786; 4 Words and Phrases, Second Series, 786; 24 Cyc., 128, 135; 37 Cyc., 528.

The Constitution containing no express prohibition, it was competent for the legislature to provide a summary procedure for the removal of public officers for misconduct in office, without violating the right to trial by jury. *Fields* v. *State*, 8 Tenn. (Mart. & Y.), 168; *Sevier* v. *Justices, Peck*, 334; 24 Cyc., 134; *People ex rel.* v. *Kipley*, 171 Ill., 44, 49 N. E., 229, 41 L. R. A., 775; *Moore* v. *Strickling*, 46 W. Va., 515, 33 S. E., 274, 50 L. R. A., 279; *Burke* v. *Jenkins*, 148 N. C., 25, 61 S. E., 608.

Modern ouster statutes which in terms deny the right to trial by jury (such as the one involved in *State ex rel. Kirby* v. *Henderson*, 145 Iowa, 657, 124

N. W., 767, Ann Cas., 1912A, 1286) are not on that
account unconstitutional; nor are officers proceeded
against entitled to a jury where the proceedings are
made summary in nature and no trial by jury is ex-
pressly provided for. *Woods* v. *Varnum*, 85 Cal., 639,
24 Pac., 843; *Rankin* v. *Jauman*, 4 Idaho 53, 36 Pac.,
502.

In the last-cited case it was said:

"The right of the legislature to provide for the sum-
mary removal of incompetent or unfaithful officers is
no new doctrine. . . . It arises from the exigen-
cies of government, and, if its enforcement is to be ob-
structed by all the delays and embarrassments incident
to a jury trial, the aim and purpose of the law would
be entirely defeated."

We are of the opinion that it was the intention of
the legislature in the act under review to make the
proceeding a summary proceeding. The language
"said proceedings in ouster shall be summary" clearly
manifests that purpose.

It is argued by appellant that this is not the proper
construction; that its popular meaning, rather than
its legal, should be given to the word "summary," and
the provision of the act construed to mean only that
proceedings under it shall be speedy and expeditious.
We had occasion to comment in the opinion on the
former hearing that the act evidences the use of legal
terminology. It was the work of a draftsman skilled
in the law, and when a summary proceeding was pro-
vided for the legislature had in mind the nature of

such a proceeding as contradistinguished from a regular one.

This being settled, it follows that, when a summary proceeding was provided, that, without more, meant that the trial should be one without the intervention of a jury. This, as we have seen, is a part of the very definition of the phrase "summary proceeding." When the phrase is used in a statute without more, a trial by jury is, in terms as if express, excluded. *Woods* v. *Varnum*, supra; *Govan* v. *Jackson*, 32 Ark., 557, cited in *Taylor* v. *Carr*, 125 Tenn., 249, 141 S. W., 745, Ann. Cas., 1913C, 155, with approval; *Yoder* v. *Com.*, 107 Va., 823, 57 S. E., 583. And the same principle is recognized in *Territory* v. *Sanches*, 14 N. Mex., 493, 94 Pac., 954, 20 Ann. Cas., 109.

An extended argument is made that, because the act provides that ouster suits shall be "triable as equitable actions" and "shall be conducted in accordance with the procedure of courts of chancery where not otherwise expressly provided herein," and because in the ordinary or regular chancery cause material issues of fact may, it is claimed, be submitted to a jury as a matter of right, the constitutional guaranty applies to this proceeding. The right to a jury in the proceeding, however, is to be deemed excluded, not because it is an equitable action, but because, while it is such, it is also a peculiar action, irregular and summary in character, in respect to which a court of equity, or whatever character, does not proceed according to the course of the common law.

We need not therefore follow able counsel into their elaborate argument as to when, if ever, trial by jury of issues of fact in ordinary equity causes was guaranteed by a constitutional provision; as to which, however, see Gibson's Suits in Chancery (2d Ed.), sec. 547, note, and cases cited.

In this connection it may be observed that this court has held that in the legal action of *mandamus* there is no constitutional right of trial by jury, such not having been demandable at common law (24 Cyc., 129), though such a trial may be granted in the discretion of the court (*Marler* v. *Wear,* 117 Tenn., 244, 96 S. W., 447) ; that election contests are not jury cases (*Shields* v. *McMahan,* 112 Tenn., 4, 81 S. W., 597; *Taylor* v. *Carr,* 125 Tenn., 235, 249, 141 S. W., 745) ; that a proceeding to disbar an attorney and deprive him of his *status* as an officer of the court is to be tried summarily by the court without a jury (*Davis* v. *State,* 92 Tenn., 634, 642, 23 S. W., 59).

The circuit judge properly ruled against appellant on his demand for a jury.

The appellant in the lower court at a timely stage objected to the introduction of oral evidence, on the ground that the proceeding is provided to be conducted ''in accordance with the procedure of courts of chancery, where not otherwise not expressly provided herein, and that the Code, Shannon, section 6272, stipulates that in chancery cases testimony shall be taken in writing. We are of opinion, in view of the fact that the proceeding is summary, that oral proof was prop-

erly admitted. To have taken the proof in the form of depositions under the rules of chancery procedure, allowing four months for proof in chief and two months for proof in rebuttal, would have frustrated the purpose of the act which looked to expedition.

The purpose of the act was to advance the remedy, and in such case the construction to be given it should be liberal to the same end. *Cannon* v. *Wood,* 2 Sneed (34 Tenn.), 177; *Rose* v. *Wortham,* 95 Tenn., 505, 32 S. W., 458, 30 L. R. A. 609.

Counsel of Howse advance the proposition that he, as mayor, was a "civil officer" within the meaning of article 5 section 5, of the constitution, and that this section provides the causes for which and the exclusive procedure under which he may be removed from office. This argument is not well based, for reasons set forth in full in the opinion this day handed down in the case of *State ex rel.* v. *Crump,* 183 S. W., 505; the two cases having been heard, considered, and decided at the same time as companion cases.

We come then to a consideration of the assignment of errors which relate to the facts and seek to impeach the judgment rendered on the merits in the court below.

Howse was first elected to the office of mayor in the fall of 1909. In the previous spring a city ordinance had been passed prohibiting the sale of intoxicating liquors. In the platform on which Howse ran was the statement:

"There can be no two opinions among good citizens and law-abiding people about the expediency of enforcing any law that has been regularly passed by the constituted authority."

In an address to the voters (which was published), after commenting upon the then recent passage of the State prohibition law, Howse said:

"I want to be understood as saying in this connection that if I am placed at the head of the Nashville government I will vigorously and literally see to the enforcement of this law. I will not confine my efforts in this direction to isolated spasms of activity, or to widely separated and showy contortions of zeal. The mayor of Nashville has the power, if he has the will, to see that every lawful statute and ordinance is consistently enforced."

The address contains another significant passage:

"It should not be said that any law which in the opinion of the lawmaking body was proper to be enacted for the purpose of protecting the morals of our people can, with impunity, be violated, or that it can, with official countenance, become a void letter in the city which is the educational center of the South."

Howse was elected to the mayoralty, and he was again elected in 1911, and then became ineligible under the terms of the existing charter of the city. A new charter was passed by the legislature which permitted of Howse's election to the mayoralty a third time in the fall of 1913. At that time open saloons were running in violation of the law in the business

section of the city. As mayor, Howse had control and supervision of the police department.

The record makes manifest that funds were raised from the saloonists that went into the 1913 campaign fund of Howse, and that in return for the monthly levies made upon them they secured protection in the violation of law. One of these, Morse, who was a close friend of Howse, a codirector in the same bank, and whose place of business was near that of Howse, testifies that he was treasurer of this fund and contributed $15 per month himself; others more. Continuing:

"Q. You were running, and you were not being raided by the police of Nashville?

"A. No, sir.

"Q. And you were receiving protection in violation of law?

"A. Well, you might call it that.

"Q. I am asking you.

"A. Yes; you might call it that.

"Q. And you were paying $15 a month to get that protection, weren't you?

"A. That is true.

"Q. Didn't you consider protection cheap at $15 a month?

"A. Well, yes; that is pretty reasonable."

The funds were deposited in the bank referred to, and the treasurer can give no satisfactory account of the expenditure of the fund or of those to whom it was checked out.

Contrasted with the above pledges is the following excerpt from the answer of Howse to the charges contained in the petition of accusation:

"Answering further, the defendant Hilary E. Howse says that from the time he was elected mayor in October, 1909, up to January 15, or thereabouts, 1915, that liquors were sold in Nashville with his knowledge, and that he was elected to office when the public sentiment of the city was such that it demanded the sale of liquors. Defendant knew of their sale, and did not order or direct the suppression thereof, because he had announced in his candidacy for the office in 1911 that he was opposed to prohibition, but favored local option, and he lived up to the statements he had made to the people who elected him after election as to the practice in the enforcement of the liquor laws."

He further says in his answer that:

"In deference to the changed sentiment of his party and the people, and in conformity to the policy adopted by the State officials, he ordered the suppression of liquor traffic by the police force."

The facts just recited, without more, constitute ample cause for ouster. *State ex rel.* v. *Ryan,* 92 Neb., 636, 139 N. W., 235, Ann. Cas., 1914A, 224; *State ex rel.* v. *Wilcox,* 78 Kan., 597, 97 Pac., 372, 19 L. R. A. (N. S.), 224, 130 Am. St. Rep., 385. The attempted justification of himself on the ground that the local public sentiment was opposed to law enforcement is no sort of justification or palliation. An official is elected and sworn to enforce the law, not public senti-

ment; and any suggestion that a municipality, a crea-
ture of the State, or its officers may set at naught or
defy the laws of a sovereign State cannot be too se-
verely rebuked. That way leads to anarchy. The
officer who treads it brands himself as unworthy.

We shall not undertake to discuss and specifically
pass on each of the other grounds of accusation
against Howse as mayor. Several, though not all, of
them are sustained by the proof.

We shall, however, refer to two of these.

One relates to the building of a market house on
Haymarket square at a total cost above $17,500. In
order to avoid the charter provision requiring that in
case any estimated expenditure amounted to more than
$500 the work should be advertised and let to the low-
est responsible bidder, the work was done without
compliance with these requirements. One firm did
most of the work, and was paid by means of vouchers
of $500 or under, signed by Howse, as if separate
smaller contracts were let, thus, in substance, defeat-
ing the charter's check on collusion and extravagance.
Color is given to this transaction by the facts that this
market house was erected within a short distance of
Howse's business establishment, without any real need
of it at that place; that in order to induce its construc-
tion a number of those owning property near by sub-
scribed to a fund to be donated to the city in part pay-
ment; that Howse's firm was one of the subscribers;
and that on the completion of the building this fund
was returned to the subscribers. It is fairly indicated

on the record that the market house was from the outset a failure, entailing a heavy loss on the city.

In respect of a distinct charge of the illegal delegation to subordinates of the duty of approving vouchers, it appears that the mayor, in violation of section 3 of the city charter, frequently permitted his subordinates to sign his name to vouchers in approval, and that in instances the practice led to the commission of gross frauds on the city treasury.

Without prolonging the discussion under this head, we hold that the circuit judge did not err in ousting Howse from his office.

The relators assign error in the judgment below in that Commissioner Robert Elliott was reinstated in his office, from which he had been suspended by interlocutory decree.

We have carefully read the record on this point, and have reached the conclusion that the circuit judge correctly ruled in favor of appellee Elliott. The solution of the dispute depends on questions of fact which we shall not undertake to discuss.

A second error assigned by the relators is that the trial judge did not decree that the board of commissioners of the city as then constituted "may proceed to the election of a successor to defendant Hilary E. Howse as mayor." The circuit judge was of opinion that there was no issue in the pleadings to support such an adjudication, and that all parties necessary for its determination were not before the court, and that it was not proper to adjudge in respect of the

tenure of the person who had been chosen to carry on the duties of the mayor at the time of Howse's suspension. We think that the circuit judge held and enforced the correct view. The right of Howse only was in issue. The *status* of his successor under the act was not to be determined without the latter having a day in court. He did not hold by reason of any court appointment, but under an election held in pursuance of the charter of the city.

Finding no error in the rulings of the circuit judge which could affect the result, the judgment entered below is affirmed. The costs of the appeal will be paid three-fourths by appellant Howse, and one-fourth by appellees.