STATE *ex rel.* MYNATT, Atty. Gen., *v.* HENRY KING *et al.*

(*Knoxville.* September Term, 1916.)

1. **JURY.** Intoxicating liquor sale. Injunction. Right to jury trial.

In view of Shannon's Code, sections 6282-6287, as to jury trial of issues in suits in chancery, etc., a defendant in proceeding under Pub. Acts (2d Ex. Sess.) 1913, chapter 2, as to abatement as public nuisances of places where liquor is sold, etc., by filing a bill or petition in any chancery, circuit, or criminal court, providing that proceedings thereunder shall be conducted in accordance with procedure of chancery courts, etc., is entitled to jury trial of the facts in issue, notwithstanding the act contemplates that cases shall be tried with expedition, and a suit cannot be dismissed without the consent of the court. (*Post,* ·*pp.* 20-26.)

Acts cited and construed: Acts 1913, ch. 2.

Case cited and approved: State ex rel. v. Howse, 134 Tenn., 67.

Code cited and construed: Sec. 6282 (S.).

2. **EQUITY.** Jury trial.

Under Shannon's Code, sections 6282-6287, as to jury trial in chancery cases, the jury does not deliver a general verdict as in common-law courts, but only responds to issues framed under direction of the court, who decides the points of law involved. (*Post, pp.* 26-28.)

Case cited and approved: State ex rel. v. Persica, 130 Tenn., 48.

3. **JURY.** Right to jury trial.

The common-law right of trial by jury does not relate to trials ‘n equity courts. (*Post, pp.* 28-31.)

Cases cited and approved: State ex rel. v. Howse, 134 Tenn., 67; Brewing Co. v. Currier, 126 Tenn., 535; Tennessee Fertilizer Co. v. McFall, 128 Tenn., 645; Clingman v. Barrett, 25 Tenn., 20.

137 Tenn.—2

4. **JURY.** Right to jury trial. Statute. "Summary."

In a statute creating a new cause of action, a direction that a trial in the new action shall be of a "summary" character is equivalent to saying that it shall be a trial without a jury, although the legislature may indicate that a jury shall be dispensed with by the use of other language. (*Post, pp.* 28-31.)

5. **JURY.** Right to jury trial. Statute.

Where dispensing with the jury is asserted as the distinguishing feature of a new form of action provided by the legislature for an infraction of law, that purpose should clearly appear from the face of the act, and will not lightly be inferred. (*Post, p.* 31.)

6. **STATUTES.** Construction. Consequences.

Statutes should be construed according to established principles without regard to the consequences, unless they are absurd, irrational, or lead to the unconstitutionality of the act. (*Post, p.* 31.)

---

FROM KNOX.

---

Appeal from the Circuit Court of Knox County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Van A. Huffaker, Judge.

Frank M. Thompson, Attorney-General, Wm. Meyerpoff and R. A. Mynatt, Attorney-General, for relator.

Charles M. Roberts and W. F. Black, for defendants.

State ex rel. v. King.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This proceeding was begun in the circuit court of Knox county under chapter 2 of the acts passed by the Fifty-Eighth General Assembly, at its second extra session. A petition was filed by the State of Tennessee, on relation of R. M. Mynatt, Attorney-General of the district, against Henry King, charging him with engaging in the sale of intoxicating liquors and against Doll & Mynderse as agents of the owners of the building and premises in which the unlawful business was being conducted. It was alleged that the business so carried on by defendant King was a public nuisance under the act already referred to, and it was prayed that this nuisance should be abated. The answer of Henry King was duly filed in which he denied that he was carrying on a business for the sale of intoxicating liquors at the place indicated in the bill, and demanded a jury for the trial of the cause. The temporary injunction required by the act was duly ordered by the trial judge. Subsequently the case came on for final hearing. The trial judge overruled the defendant's demand for a jury trial, and thereupon proceeded to hear the testimony of witnesses, and adjudged that the defendant King was guilty of "conducting and maintaining a liquor business" on the premises referred to. Thereupon the temporary injunction was made perpetual, as provided by the act. The suit

was dismissed as to Doll & Mynderse. Judgment was rendered against King for the costs, and an order for the sale of the property found in the building was made.

. King appealed to the court of civil appeals, and there the judgment was reversed for the error of the trial judge in refusing King's demand for a jury. The case was then brought to this court by the writ of *certiorari*. The only question is whether King was entitled to a jury. The State insists that the action was intended by the legislature to be summary, and therefore without the intervention of a jury, as decided in *State ex rel.* v. *Howse,* 134 Tenn., 67, 80-85, 183 S. W., 510, L. R. A., 1915D, 1090, in respect of the "Ouster Act" (Pub. Acts 1915, chapter 11).

In order to determine this question it is necessary to set out the chief provisions of chapter 2 of the Extra Session of 1913.

The act is entitled, "An act to define and more effectually provide for the abatement of certain public nuisances." The parts of the statute necessary to be quoted are:

"Section 1.   That the conducting, maintaining, carrying on, or engaging in the sale of intoxicating liquors, the keeping, maintaining, or conducting bawdy or assignation houses, and the conducting, operating, keeping, running, or maintaining gambling houses in violation of the laws of this State, in any building, structure, or place within this State, and all means,

State ex rel. v. King.

appliances, fixtures, appurtenances, materials, and supplies used for the purpose of conducting, maintaining, or carrying on such unlawful business, occupation, game, practice, or device, are hereby declared to be public nuisances, and may be abated under the provisions of this act.

"Sec. 2. That jurisdiction is hereby conferred upon the chancery, circuit, and criminal courts of this State to abate the public nuisances defined in the first section of this act upon petition in the name of the State, upon relation of the attorney-general, or any district attorney of the State, or any city or county attorney, or without the concurrence of any such officers, upon the relation of ten or more citizens and freeholders of the county wherein such nuisances may exist, in the manner herein provided.

"Sec. 3. That whenever a public nuisance, as defined in this act, is kept, maintained, carried on, or exists in any county in this State, a bill or petition may be filed in any chancery, circuit, or criminal court of such county, in the name of the State, by and upon the relation of any of the persons named in the second section of this act, against the person or persons keeping, maintaining, or carrying on such nuisance, and all aiders and abettors therein, and the owners, proprietors, or agents or persons or corporations in charge or control of the building or place wherein such nuisance exists, for the purpose of having such nuisance abated and permanently discontinued.

"Where such bill or petition is filed by citizens and freeholders, they shall make bond, in such sum as the judges or chancellors shall prescribe, conditioned to pay all costs and damages in the event the court trying the case shall find and adjudge that the proceeding was instituted without probable cause; but no bond for costs or damage shall be required where the proceeding is instituted by and upon the relation of the attorney-general or a district attorney for the State or a county or a city attorney.

"Sec. 4. That in such proceeding the court or a judge or chancellor in vacation shall, upon the presentation of a bill therefor alleging that the nuisance complained of exists, award a temporary writ of injunction, with such bond as required by law in such cases, in case the bill is filed by citizens and freeholders; but no bond to be required when filed by the officers herein provided for if it shall be made to appear to the satisfaction of the court, judge, or chancellor, by evidence in the form of a due and proper verification of the bill or petition under oath, or of affidavits, depositions, oral testimony, or otherwise, as the complainants or petitioners may elect, that the allegations of such bill or petition are true, enjoining and restraining the further continuance of such nuisance, and the closing of the building or place wherein the same is conducted until the further order of the court, judge, or chancellor.

"Five days' notice in writing shall be given the defendant or defendants of the hearing of the appli-

cation; and if then continued at his or their instance, the writ as prayed for shall be granted as a matter of course; and when such injunction shall have been granted, it shall be binding upon the defendant or defendants throughout the county until modified or set aside by the court, judge, or chancellor having cognizance of the case; and any violation thereof by the defendants, or upon their procurement, shall be a contempt of court and punished as hereinafter provided.''

''Sec. 5. That proceedings under this act, whether in the chancery, circuit, or criminal courts, shall be conducted in accordance with the procedure of courts of chancery where not otherwise expressly provided herein; and all of said courts having cognizance of such proceeding are hereby given the full jurisdiction and powers of courts of equity with respect to such proceedings.

'' (Such proceedings shall be triable at the first term after due notice or service of process, and shall, in the chancery and circuit courts be given precedence over all other causes.)   *   *   *

''No such proceeding shall be voluntarily dismissed except upon a written, sworn statement of the relator or relators of the reasons for dismissal; and if such reasons are not satisfactory to the court, or the court shall be of opinion that the proceeding ought not to be dismissed, it may order the same to proceed, and may substitute another relator or re-

lators willing to act as such, either with or without bond, at the court's discretion.

"Sec. 6.   That if upon the trial the existence of the nuisance be established, an order of abatement shall be entered as part of the judgment or decree of the court, which order shall direct the removal from the building or place where such nuisance exists or is maintained, of all means, appliances, fixtures, appurtenances, materials, supplies, and instrumentalities used for the purpose of conducting, maintaining, or carrying on the unlawful business, occupation, game, practice, or device constituting such nuisance; and shall direct the sale thereof, or such portion thereof as may be lawfully sold, upon such terms as the court may order, and the payment of the proceeds into court to be applied to costs or paid over to the owner, and the destruction of such portion thereof, if any, as cannot be lawfully sold within this State; and the judgment or decree shall perpetually enjoin the defendant from engaging in, conducting, continuing, or maintaining such nuisance, directly or indirectly, by themselves or their agents or representatives, and perpetually forbidding the owner of the building from permitting or suffering the same to be done in such building."

It is true the action provided for is distinguished from ordinary suits in chancery by the fact that jurisdiction is given not only to the chancery court, but to the circuit and criminal courts, as well, still

the pleading to be used by the complainant is such as is customary in ordinary chancery suits, that is, a bill or petition. Moreover, it is provided that the proceedings under the act in whichever one of the three courts it may be instituted "shall be conducted in accordance with the procedure of courts of chancery were not otherwise expressly provided herein; and all of said courts having cognizance of such proceedings are hereby given the full jurisdiction and power of courts of equity with respect to such proceedings."

One of the ordinary proceedings in chancery, where the demand is. made, is a trial by jury according to the method prescribed in Shannon's Code (section 6282 to section 6287). These sections read:

"6282. Either party to a suit in chancery is entitled, upon application, to a jury to try and determine any material fact in dispute, and all the issues of fact in any case shall be submitted to one jury.

"6283. If the demand is made in the pleadings, the cause shall be tried at the first term before a jury summoned *instanter,* in the same way that jury causes are tried at law.

"6284. If the demand is only made after the cause is ready for hearing, the trial will be before a jury summoned *instanter* upon the like evidence as a suit at law, together with such parts of the bill, answers, depositions, and other proceedings in the cause, as the court may order.

"6285. The issues shall be made up by the parties under the direction of the court, and set forth briefly and clearly the true questions of fact to be tried.

"6286. The trial shall be conducted like other jury trials at law, the finding of the jury having the same force and effect, and the court having the same power and control over the finding( as on such trials at law.

"6287. The parties in all jury trials in chancery may summon witnesses and enforce their attendance, as at law."

We can see nothing in the act which would justify us in holding that the privilege afforded by the sections of the Code just quoted should be denied to defendant on the final hearing of the cause for the entry of a permanent injunction. No material distinction is found in the fact that the suit may be brought in the chancery, circuit, or criminal courts, since each court, for the purposes of the particular litigation, is expressly clothed with all of the powers of a court of chancery, and bound to hear it in accordance with the procedure of the courts of chancery. One point in that procedure is the trial by jury when demanded under the sections of the Code above set out. When the powers given by those sections are used the jury does not deliver a general verdict as it does in common-law courts, but only responds to such issues as may be framed by the parties under the direction of the trial judge, sitting as a chancellor for the time being. Those issues are

usually framed in the form of questions, and practically all the points affecting them are well settled in our cases. Upon receiving the verdict of the jury setting the determinative issue or issues of fact submitted to them, the trial judge decides the point of law involved. In a case of the kind before us the trial judge, on final hearing, determines whether the facts found by the jury sustain the charge that the defendant has been conducting a public nuisance. The jurors do not return a general verdict of guilty or not guilty as at law, nor of themselves decide whether the facts make the case of a public nuisance, but only return answers to the questions submitted to them on the determinative issues of fact submitted. We can perceive nothing in the provisions of this act that indicates a purpose on the part of the legislature to direct that trials should be had without a jury. It is true that the provisions of the act disclose a purpose on the part of the legislature that cases arising under it should be tried with expedition. This particular point appears from the provision respecting continuances, and from that one securing a trial prior to other cases. The case also differs from an ordinary action in that the suit cannot be dismissed without consent of the court; but these features are in perfect harmony with a jury trial. No special haste is shown in the provisions concerning the issuance of a preliminary injunction, since five days' notice, at least in one aspect, is required (*State ex rel.* v. *Persica*, 130 Tenn., 48, 69, 70,

168 S. W., 1056) before this can be done. In all ordinary cases it is within the direction of the chancellor to award an injunction on an *ex parte* application. This indeed is the customary method, but of course subject to a later application by the defendant for a modification or dissolution. It should be stated, however, that in ordinary practice the chancellor sometimes refuses to grant an injunction except after notice. In cases arising under the present statute he cannot grant the preliminary injunction without five days' notice, when the bill is presented by an officer. 130 Tenn., 69, 70, 168 S. W., 1056.

The foregoing constitute the special practice points of the act. In all other respects its provisions require conformity to the general chancery practice.

We do not hold that the customary option of a jury trial must be accorded under this act because of any right under the common law. That right does not relate to trials in equity courts. It may be true that the legislature could have directed this cause to be tried as a summary action. This means without the intervention of a jury. This was done in the "Ouster Act." In that feature of the "Ouster Act" the court, in *State ex rel* v. *Howse,* 134 Tenn., 67, 183 S. W., 510, L. R. A., 1916D, 1090, found a clear and unmistakable disclosure of the purpose of the legislature to have cases arising under that act tried without a jury. It is true, as insisted by counsel, that the "Ouster Act" provided that suits arising under it should be conducted in accordance with the pro-

cedure of courts of chancery, also that they should be triable as equitable actions; but it contained the additional qualifying matter appearing in section 7, that the proceeding should be summary. The language of the "Ouster Act" upon this subject is:

"That said proceedings in ouster shall be summary and triable as an equitable action," etc.

In these words the court found a clear indication of the legislative purpose. In that opinion the court said:

"We are of the opinion that it was the intention of the legislature in the act under review to make the proceeding a summary proceeding. The language 'said proceedings in ouster shall be summary' clearly manifests that purpose."

The court also, in that opinion, adopted from Bouvier's Law Dictionary the definition of a summary proceeding, as a—
"form of trial in which the established course of legal proceedings is disregarded, especially in the matter of trial by jury."

In the Cyclopedic Law Dictionary the term "summary proceeding" is defined:

"A form of trial in which the ancient established course of legal proceeding is disregarded, especially in the matter of trial by jury," etc.

In 27 Am. & Eng. Enc. of Law, p. 373, it is said:

"The term 'summary proceedings' designates those proceedings before judicial tribunals which should be

speedy or informal in nature. Proceedings are said to be summary when they are short or summary in comparison to the regular or formal proceedings from which they only differ in that they are disposed of without the aid of a jury."

So we perceive the commanding importance of the word "summary" when used in a statute directing that a trial in a new action shall be of that character. It is equivalent to saying that it shall be a trial without a jury. Therefore in the ouster case, when it was said that the trial should be conducted as other trials in chancery except as otherwise provided in the act, such "otherwise" direction was found in the use of the clause declaring that the action should be a summary one. No such "otherwise" provision is found in the nuisance act with which we are dealin'. It is true, as urged by counsel for the State, that it is not absolutely essential that the word "summary" shall be used. It is possible, of course, for the legislature to indicate that a jury shall be dispensed with by the use of other language. We have a great many summary proceedings provided for in the Code, all falling under that general term, given by sections 5347 to 5401, inclusive. For further instances see *Brewing Co. v. Currier,* 126 Tenn., 535, 541, 150 S. W., 541, *et seq.,* and *Tennessee Fertilizer Co.* v. *McFall,* 128 Tenn., 645, 653, 163 S. W., 806, *et seq.* They are usually presented by motion, and perhaps uniformly tried without a jury (*Clingman* v. *Barrett,* 6 Humph. [25 Tenn.], 20, 22), except in a few in-

State ex rel. v. King.

stances wherein a jury is expressly provided for, as in sections 5388 and 5393.

Where dispensing with a jury is asserted as the distinguishing feature of a new form of action provided by the legislature for an infraction of law, that purpose should clearly appear from the face of the act. Certainly the court cannot do so formidable a thing as to base the denial of so great a privilege on mere general construction, unless the materials for such construction be so abundant and so significant as to lead our minds conclusively and easily to that result.

It is urged in one of the briefs for the State that the construction we have just given will take the heart out of the nuisance act. How this may be we do not know. We can only construe the act according to established principles. In pursuing this course we cannot regard the consequences unless they are absurd, irrational, or lead to the unconstitutionality of the act. Our construction has no such result. If the act should be amended the legislature is in session and the amendment can be made.

It results that there is no error in the judgment of the court of civil appeals, and it is affirmed.